## ROJAS–ADAM CORPORATION OF DELAWARE v. YOUNG et al.

(Circuit Court of Appeals, Fifth Circuit. June 28, 1926.)

No. 4775.

**1. Courts** ⊜⇒314—**Corporations are deemed to be "citizens" of state of incorporation for purpose of jurisdiction of federal courts.**

Corporation's stockholders are conclusively presumed to be "citizens" of state of incorporation, so that corporation is deemed citizen of such state for purpose of showing jurisdiction in federal court based on diversity of citizenship.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Citizen.]

**2. Courts** ⊜⇒312(8)—**Person may transfer property to another for purpose of vesting jurisdiction in federal courts, if transfer is bona fide.**

Person may transfer property to another for purpose of vesting jurisdiction in federal courts, if transfer is bona fide, and courts will not inquire as to motive of parties, but, if transfer is in bad faith, federal court will dismiss suit.

**3. Courts** ⊜⇒314—**Bill to enjoin trespass on lands of foreign trapping corporation which was organized by local citizens held within jurisdiction of federal courts.**

Bill to enjoin trespass on lands of foreign trapping corporation, organized in another state, by local citizens, because of laws more favorable to exchange of stock for land and also to give it standing in federal courts in suits against trespassers, *held* within jurisdiction of federal courts.

**4. Injunction** ⊜⇒136(2).

Trapping corporation, lessee of 5,364 acres of land, *held* entitled to interlocutory injunction restraining trespass thereon.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Louis H. Burns, Judge.

Suit by the Rojas-Adam Corporation of Delaware against Johnny Young and others. The bill was dismissed for want of diversity of citizenship, and plaintiff appeals. Reversed and remanded, with instructions.

W. B. Spencer, of New Orleans, La. (Spencer, Gidiere, Phelps & Dunbar, of New Orleans, La., on the brief), for appellant.

Leander H. Perez and John T. Convery, both of New Orleans, La., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. In this case appellant, plaintiff below, a corporation organized under the laws of Delaware, filed a bill in the District Court against appellees as named defendants and against other persons unknown, seeking a restraining order and interlocutory and permanent injunctions to prevent trespass on certain lands in Jefferson and Plaquemines parishes, La.

The bill, in substance, alleged that plaintiffs had acquired certain leases on said lands described in the bill, exceeding 5,000 acres, giving exclusive trapping rights and privileges worth annually over $5,000; that defendants, all citizens of Louisiana, had trespassed on said land on various specified dates; that defendants had conspired with other citizens of Louisiana to further trespass on the land, and, unless restrained, would deprive plaintiff of its property without any adequate redress at law. A restraining order issued, and defendants were served with a rule nisi.

Defendants excepted to the jurisdiction of the court and moved to dismiss the bill for want of diversity of citizenship, on the ground that plaintiff corporation is a sham, organized by citizens of Louisiana for the purpose of perpetrating a fraud on the jurisdiction of the federal courts. This contention found favor with the District Court, the restraining order was recalled, and the bill dismissed. The sufficiency of the amount involved is not questioned.

[1] The law governing the case is clear. It is elementary that the stockholders of a corporation are conclusively presumed to be citizens of the state of its incorporation so that the corporation itself is deemed to be a citizen of that state for the purpose of showing jurisdiction in the federal courts based on diversity of citizenship.

[2] It is also well settled that a person may transfer property to another for the purpose of vesting jurisdiction in the federal courts, provided the change of ownership is bona fide. In such cases courts will not inquire as to the motives of the parties. McDonald v. Smalley, 1 Pet. 620, 7 L. Ed. 287; South Dakota v. North Carolina, 192 U. S. 310, 24 S. Ct. 269, 48 L. Ed. 448.

On the other hand, if the transfer is shown to be in bad faith, merely to vest color of title, and with the intent to retake the property on the termination of the litigation, a federal court will dismiss the suit as in fraud of its jurisdiction. Lehigh Mining & Mfg. Co. v. Kelly, 160 U. S. 327, 16 S. Ct. 307, 40 L. Ed. 444; Miller & Lux v. East Side Canal Co., 211 U. S. 293, 29 S. Ct. 111, 53 L. Ed. 189; Southern Realty Invest. Co. v. Walker, 211 U. S. 603, 29 S. Ct. 211, 53 L. Ed. 346.

[3] It is evident that in each case the turning point is the intention of the parties to the transfer. This must necessarily be determined from the facts peculiar to the transaction. In this case, briefly stated, the material facts, which are uncontradicted, are these:

The plaintiff corporation was organized under the laws of Delaware in November, 1925, with a capital stock of $5,364, represented by shares of $1 par value. As appears from the charter, it has the powers usually granted corporations, and one of the specific purposes for which it was formed is the trapping of fur-bearing animals and dealing in furs.

Shortly thereafter Leon Rojas, Wm. E. Adams, and Robert Verret, three of the incorporators, together with Hercules Georgusis, Victorin Coulon, and Gilespie Adam, executed leases to the corporation of 5,364 acres of land, with the trapping privileges thereon, in the amounts of 3,600, 1,000, 364, and 200 acres, respectively, for the first four named, and 100 acres each for the other two.

These leases were made for $1 per acre, for a period of five years, with the privilege to the corporation of renewal for five years at the same rate; they are absolute in form, and contain no stipulation giving either party the right to cancel them. Stock at par was issued to the lessors in full payment for the leases. The property involved is swamp land, having little or no value except for trapping fur-bearing animals, and is part of a tract of 10,000 acres purchased by Verret in September, 1925, at $2.25 per acre. Subsequent sales were at from $5 to $7 per acre. Before his purchase, Verret was par-

ty to an agreement to sell part of the land to. some of the above-named lessors, and the organization of a corporation was then contemplated to operate the tract as a whole by leases to trappers. The parties consulted Mr. Edward L. Gladney, a reputable attorney of New Orleans, and he advised incorporating under the laws of Delaware, as he considered them more favorable to the exchange of stock for land, and also because the corporation would have standing in the federal courts in suits against trespassers, if they were citizens of Louisiana, and so avoid local prejudice.

After securing the leases, plaintiff subleased parts of the land to various trappers. Defendants, or their agents, had gone on the property before the corporation was actually organized, which the incorporators knew, and refused to vacate. This suit followed.

On this state of facts the District Court found that the parties above named, aided and counseled by their attorney, collusively joined together to organize a corporation for the purpose of improperly creating a case cognizable in the District Court, but not substantially involving a dispute between citizens of different states.

In support of this it is argued on behalf of defendants that, as the incorporators of plaintiff retain the ownership of the land and constitute the board of directors and sole stockholders of the corporation, it is within their power to dissolve the corporation at any time, cancel the leases, and retake the property. This argument might be made in respect of any transfer of property, as the parties can always set it aside by mutual consent, and is not persuasive in this case. We are constrained to disagree with the District Court.

From the bare facts shown, good faith may be easily deduced. It is well known that the trapping of fur-bearing animals in the swamps of Louisiana is an extensive and profitable business, and it is usual for the owners of large tracts of swamp land to lease the trapping rights to actual trappers. It would therefore be perfectly logical for individuals owning contiguous lands to form a corporation to operate the tract as a whole. It is not shown that the consideration for the leases is inadequate. Considering the low value of the land, it may be inferred that the rental was assessed at a fair figure, but the price is immaterial in view of the fact that stock in just proportion was issued in payment.

From the record it appears that the individuals in interest are mostly country merchants and dealers in fish and furs, and they declare it was their intention to acquire the land for the purpose of leasing it to trappers. They also declare it was their intention to organize a corporation to operate the land as a whole. They further declare that it is their intention to maintain the corporation for that purpose, and they deny any intention to cancel the leases . before their termination. The necessity of bringing this suit gives color and strength to all of this. There is nothing in the record to impeach the character or rebut the declarations of good faith of these men. There is no doubt they anticipated litigation, but they had the right to so arrange their affairs as to give them access to the federal courts if it could be done legally and in good faith. The advice of Mr. Gladney along these lines was both ethical and sound, and bad faith cannot be inferred from it.

[4] Of course, a burden is put upon the federal courts in issuing an injunction such as is sought in this case, as it is tantamount to policing the property for a while, but these courts must accept the responsibility and the labor put upon them by the law and the exigencies of the circumstances, and do their best to discharge their duties, however onerous and disagreeable they may be.

From the record, it would appear that the plaintiff has shown prima facie title to the 5,364 acres of land leased, and on the evidence of trespassing shown they were entitled to an interlocutory injunction as prayed for.

The judgment appealed from will be reversed, and the case remanded, with instructions to enter an interlocutory injunction as above indicated and for further proceedings not inconsistent with this opinion.

Reversed and remanded.