Mildred Moore LISENBY and Girard P. Brownlow, Jr., Plaintiffs,

v.

Louis PATZ, doing business as Harper Motor Lines, Defendant.

Helen Campbell BAILEY and J. Lamar Pierson, Plaintiffs,

v.

Louis PATZ, doing business as Harper Motor Lines, Defendant.

Session MITCHUM and M. C. Segall, Plaintiffs,

v.

William A. ADER, Defendant.

Johnnie WALTERS and Harry Hutton, Plaintiffs,

v.

SUPERIOR TRUCKING COMPANY, Inc., a corporation, Defendant.

Civ. A. Nos. 4639, 4640, 4797, 4798.

United States District Court
E. D. South Carolina.
April 22, 1955.

Nos. 4639, 4640:

Leppard & Leppard, James E. Leppard, Chesterfield, S. C., for plaintiffs.

Willcox, Hardee, Houck & Palmer, Hugh L. Willcox, Florence, S. C., for defendant.

No. 4797:

J. D. Parler, N. H. Hamilton, St. George, S. C., for plaintiffs.

Waring & Brockinton, Charles W. Waring, Charleston, S. C., for defendant.

No. 4798:

J. D. Parler, and N. H. Hamilton, St. George, S. C., for plaintiffs.

C. Walker Limehouse, Rosen, Horger & Sims, Charlton B. Horger, Orangeburg, S. C., for defendant.

HOFFMAN, District Judge.

These four actions involve a vital question relating to practice and procedure in the Federal Courts of South Carolina. Succinctly stated, the question is as follows:

"May a citizen and resident of South Carolina, having sustained a *personal injury* in South Carolina in an accident alleged to have been caused by a non-resident, assign an undivided one one-hundredth (1/100) interest in his claim to a citizen and resident of the same state in which the non-resident defendant resides, and thereafter institute an action in the South Carolina State Court and defeat the defendant's right of removal to the Federal Court under the diversity of citizenship statute?"

In each of these actions the defendants, non-residents of the State of South Carolina, removed the proceedings to the Federal Court, and plaintiffs have filed motions to remand. In two of the actions defenants have filed affidavits supporting their views that the motion to remand should be denied. In the two remaining actions depositions have been filed by defendants tending to show the true position occupied by the plaintiff-assignee. It is sufficient to state that, from inquiries propounded to counsel at the time of argument, the sole purpose of the assignments of the undivided one one-hundredth interest is to defeat the jurisdiction of the Federal Court.

Typical of the assignments in question is the one introduced in evidence in Civil Action No. 4798. The plaintiff-assignee, Harry Hutton, is a citizen and resident of Georgia which is also the residence of the defendant corporation, Superior Trucking Company, Inc. Hutton is the brother-in-law of one of plaintiff's counsel. The purported assignment recites as a consideration for Hutton's joining in the action as a party plaintiff the following:

(1) That Hutton will join with Walters in sharing a proportionate part of all expenses in the action to be filed by the assignor in the State Court, and

(2) That the assignee (Hutton) will perform certain investigations in Georgia incident to the case in South Carolina.

The assignment concludes with a written acceptance by the assignee and, as a matter of further precaution, the assignment is recorded.

The depositions clearly reveal the extent of the investigation by the assignee (Hutton). It could best be termed a "legal farce". The assignee refused to reveal the name of the party securing for him the Dun and Bradstreet report, and any information relating to the stability and financial worth of defendant corporation was obviously supplied by or through counsel for plaintiff who, as previously noted, is a relative by marriage.

Aside from the reference to the factual situation relating to the assignment in Civil Action No. 4798, counsel for all plaintiffs admit "with a smile" that the purpose of these assignments is solely to permit the State Court to retain jurisdiction. This Court does not condemn plaintiffs' counsel in taking such action as the practice is obviously widespread throughout the State of South Carolina as evidenced by the fact that four of such cases have been brought to the attention of the undersigned, a visiting Judge acting in this District under designation for a period of four weeks. In fact, the practice has been promoted by the publication of a book written by one of counsel in the case hereinafter referred to decided by Federal Judge Waring, on January 26, 1949; see: *"Guide to Removal and Its Prevention"*, by Thos. M. Boulware of the South Carolina Bar.

In Ridgeland Box Manufacturing Co. v. Sinclair Refining Co., D.C., 82 F.Supp. 274, Judge Waring ordered a remand in a case involving an assignment of an undivided one one-hundredth interest in a cause of action based upon *damages to real and personal property.* The exhaustive opinion by Judge Waring is persuasive, but is this decision so far-reaching as to enable the real party in interest, having sustained *personal injuries,* to assign a minute fractional interest of his claim for the sole purpose of avoiding diversity of citizenship?

The Ridgeland case, supra, was considered by the Supreme Court of South Carolina in Ridgeland Box Mfg. Co. v. Sinclair Refining Co., 216 S.C. 20, 56 S.E. 2d 585, 588, in an opinion by Justice Stukes. In approving the action of Judge Waring, the Court said:

" 'The code, however has not gone to the extent of making things legally assignable which were not so before, but it simply declares that when a transfer or an assignment has been made, which in equity has the effect of making the assignee the real party in interest, that then such assignee must sue.' "

None of the authorities cited by Judge Waring or by the Supreme Court of South Carolina refer to cases in which fractional interests of *personal injury* claims were assigned.

The question is compounded by the existence of two statutes of South Carolina. Sec. 10–207 of the Code of Laws of South Carolina (not referred to by Judge Waring) is as follows:

"Every action must be prosecuted in the name of the real party in interest except as otherwise provided in § 10–208. *This section shall not be deemed to authorize the assignment of a thing in action not arising out of contract. * * *"*

The provisions of Sec. 10–208, referred to above, have no application to the existing state of facts as the same pertains to the right of an executor, administrator, trustee of an express trust, or a person expressly authorized by statute to sue without joining with him the person for whose benefit the action is prosecuted. This merely gives force to the opinion in Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183, 52 S.Ct. 84, 76 L.Ed. 233, cited by Judge Waring. See also: Holt v. Middlebrook, 4 Cir., 214 F.2d 187. There is, in the opinion of this Court, no analogy in South Carolina between actions instituted by an administrator for wrongful death and actions instituted by the combined forces of a real party in interest and a nominal assignee of a fractional interest in personal injury cases.

In Hodges v. Lake Summit Co., 155 S. C. 436, 152 S.E. 658, the Supreme Court of South Carolina interpreted the now Sec. 10–207 and disapproved of a collusive assignment by stating that the assignee could not be considered the real party in interest and hence could not institute the action.

The other pertinent South Carolina statute to be considered is Sec. 10–209, as follows:

"Causes of action for and in respect to any and all injuries and trespasses to and upon real estate and any and all *injuries to the person or*

*to personal property* shall survive both to and against the personal or real representative, as the case may be, of a deceased person and the legal representative of an insolvent person or a defunct or insolvent corporation, *any law or rule to the contrary notwithstanding."*

While counsel have failed to refer this Court to any authorities other than the Ridgeland cases decided by Judge Waring and the Supreme Court of South Carolina, the legal effect of Sec. 10–209 cannot be overlooked. In Bultman v. Atlantic Coast Line R. Co., 103 S.C. 512, 88 S.E. 279, the Court, by dicta, stated that the now Sec. 10–207 was modified by now Sec. 10–209, and that an assignment of the thing in action, i. e., the tort by burning, was proper because of the survival statute. Actually the Court did not find it necessary to rest its decision upon this theory as it held that Bultman, as a purchaser under a contract from Mullins who was the legal owner at the time of the fire, was entitled to recover as it was Bultman's property which was damaged. Furthermore, as heretofore noted in the quoted portion of the Ridgeland case, the Supreme Court of South Carolina has apparently overruled the *dicta* in the Bultman case.

■ There must be some legal effect to Sec. 10–207 apparently restricting the right of assignment to matters arising out of contract. It still remains the law of South Carolina. This Court does not agree with the dicta in the Bultman case to the effect that Sec. 10–209 so modified Sec. 10–207 as to eliminate the restrictive language. The Bultman case was decided in 1915 and Hodges v. Lake Summit Co., supra, was written in 1930. The later decision still gives effect to Sec. 10–207 by disapproving collusive assignments. It is the considered judgment of this Court that Sec. 10–209 was enacted solely for the purpose of protecting survivorship rights and not for carrying with it the usual rights of assignability which customarily flow from survival statutes. South Carolina has repeatedly

held that causes of action for slander and libel, until reduced to judgment, are torts of a personal character and hence not assignable. Perry v. Atlantic Coast Life Ins. Co., 166 S.C. 270, 164 S.E. 753; Carver v. Morrow, 213 S.C. 199, 48 S.E.2d 814; Miller v. Newell, 20 S.C. 123, 47 Am.Rep. 833. In the last cited case the Supreme Court of South Carolina clearly analyzes the distinction between two classes of tort claims: those which affect injuriously the estate, real or personal, of a party; and those which cause injuries strictly personal and which would, in the absence of statute, die with the party injured. The first class (injury to the estate) has been universally held to be assignable; the second class (injury to the person) has been classified as non-assignable before judgment.

■ Admittedly the question is not free from doubt but it appears that Sec. 10–209, while fully preserving the survival rights, was not intended to negate Sec. 10–207, and that actions must still be instituted by the real party in interest with the additional right of a partial assignee to join as party plaintiff in any matter arising out of contract, express or implied, subject to the limitation as stated in Hodges v. Lake Summit Co., supra, prohibiting collusive assignments. While it may be argued that actions for libel and slander are directed to the character of the person, they are in the same legal classification as a physical injury sustained—neither is an injury to the estate—both are injuries to the person—neither is assignable under the South Carolina law, although admittedly a cause of action based upon physical injury survives the death. It it well recognized that the terms "assignable" and "survivability" are generally convertible, but, by reason of the peculiar wording of Secs. 10–207 and 10–209, it is this Court's conclusion that the stated minority rule is made applicable. In 4 Am.Jur., sec. 31, p. 253, under the subject "Assignments", it is said:

"In some jurisdictions it is held that a right of action for personal

injuries is not assignable, even though such action is made survivable by statute. This result has been reached under the view that nothing is assignable, either at law or in equity, which does not directly or indirectly involve a right to property, and that the statute providing for the survival of an action for personal injuries was not intended to transform the right of action into a property right, and also under the view that the assignment of a cause of action for personal injuries is contrary to public policy".

If this Court is correct in its interpretation of Sec. 10–209 of the Code of Laws of South Carolina in limiting the effect of this statute in personal injury cases to survival rights, but not conferring the right to assign, then it must be conceded that there is no statute or decision supporting the right to assign (or partially assign) an action for tort causing injuries which are strictly personal and the general rule of non-assignability applies.

■ The Court is mindful of the general rule that the motive prompting the assignment is immaterial and this decision is not based upon the accepted fact that to permit partial assignments in personal injury cases would totally destroy the right of removal by reason of diversity of citizenship. Congress could probably correct this evil by appropriate legislation but this is not the duty of the courts. Indeed, if the practice of using a nominal plaintiff-assignee continues to spread, Congress may be required to act as the underlying reasons for protecting a non-resident defendant will be completely removed within a period of a few years, due largely to the increasing popularity of survival statutes being enacted by the legislatures of many states. To the effect that motive is immaterial, see: Rosecrans v. William S. Lozier, Inc., 8 Cir., 142 F.2d 118.

■ While the motive may be disregarded, it nevertheless follows that the plaintiff-assignee must have a real interest, i. e., a genuine interest, as distinguished from an interest solely by way of accommodation to the assignor-plaintiff. The co-plaintiff must be a "legitimate" party and, in these four actions, this situation does not exist. Such is the law of South Carolina in cases arising out of contract as stated in the Hodges case. And in determining whether a plaintiff-assignee of an undivided one one-hundredth (¹⁄₁₀₀) interest is a "legitimate" party, the Court should look through the form and inquire into the substance of the purported assignment and the status of the parties thereto. Judge Waring recognized this fact when he said [82 F.Supp. 276]:

"But on the other hand, even if the parties were joined for the purpose of defeating removal, *if they really be proper parties and have legitimate standing in the court* the attempt of removal may be defeated irrespective of the intent and purpose of the plaintiff."

This leaves for consideration the fact that, in two of the pending actions, there is an allegation of property damages alleged to have been sustained by the assignor-plaintiff. The purported assignments do not specify any division between property damage and personal injuries. The several complaints filed in the state courts similarly make no such division. Each action prays for damages in the sum of $100,000. Each action asks for punitive damages without specifying what portion may be compensatory and what portion is attributable to punitive damages. Apparently every tort action in South Carolina contains an allegation of punitive damages under the liberal construction of this term in this State. If the partial assignment of an undivided one one-hundredth interest of a tort claim for personal injury is ineffective, then the entire assignment fails. Upon appropriate motions by defendants, the Court will drop the names of the assignee-plaintiffs as parties to these actions.

■ Even if the complaints alleged a specific quantum of damages for loss to personal property and had assigned the property damage claim, or a fractional interest therein, it is unlikely that this would defeat the right of removal for diversity of citizenship. The doctrine of separable controversy may then be invoked. Courts have generally held that a removal of a separable controversy operates to transfer the entire action to the Federal Court. 45 Am.Jur., "Removal of Causes", sec. 71, p. 861; 28 U.S. C.A. § 1441(c). Even if this rule be not followed, the decision in State of Nebraska v. Northwestern Engineering Co., D. C., 69 F.Supp. 347, 353, would effectively prohibit a remand as to the personal injury claim. In that case the State of Nebraska, by reason of the provisions of the Nebraska law, instituted an action to recover damages for the wrongful death of a state employee and for damages to an automobile operated by the employee but owned by the State. The Federal Court retained jurisdiction over the cause of action for wrongful death under the theory that the administratrix of decedent's estate was the real party in interest and not the State of Nebraska; the State not being a "citizen" within the purview of the Removal Act. As to the property damage claim, this was remanded to the State Court, the Court saying:

"While both causes of action may have grown out of the same accident, they are separate causes of action, each involving different parties and a different subject matter. Accordingly, jurisdiction over the first cause of action will be retained, and the second cause of action will be remanded."

A sequel to the Nebraska case relating to administrators is found in McCoy v. Blakely, 8 Cir., 217 F.2d 227. Motive to confer or defeat jurisdiction in the Federal Court is immaterial but parties collusively joined or made, by assignment or otherwise, will not invoke the jurisdiction of the Federal Court under 28 U.S. C.A. § 1359. The converse of this law is presented by the factual situations in these cases. It is recognized, however, that the statute, 28 U.S.C.A. § 1359, does not necessarily operate to prevent plaintiff-assignees from instituting actions in state courts to prevent removal to the Federal Court. 45 Am.Jur., sec. 68, p. 859.

■ There is an additional reason for denying the motion to remand in No. 4798. On the face of the assignment it appears that the same was not accepted by the assignee in Georgia until one day after the action was instituted in the South Carolina court. Diversity of citizenship must exist at the time of the commencement of the action in the state court. 45 Am.Jur., sec. 69, p. 859. Furthermore, the acceptance, if any, took place in Georgia and hence became effective there. Under the provisions of the Georgia Code, sec. 85–1805, an assignment of a right of action for personal torts is prohibited. It may well be that the plaintiff-assignees in the other cases are similarly barred, but, by reason of the comments expressed herein, it is unnecessary to so determine.

In short, it may be said that the plaintiff-assignees are "straw men" and serving merely as agents of the attorneys for the real parties in interest to defeat the jurisdiction of the Federal Court. Southern Realty Inv. Co. v. Walker, 211 U.S. 603, 29 S.Ct. 211, 53 L.Ed. 346. The assignment in No. 4798 is, in fact, collusive and, in light of this Court's interpretation of the South Carolina law prohibiting assignments of personal injury claims before judgment, it is unnecessary to inquire into the question of collusion in the other three cases, and the respective motions to remand are denied.